UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

VIRGINIA COMMUNITY BANK,

    Plaintiff,

v.                                                       Civil Action No. 3:09cv354

DANNY R. FISHER, et al.,

    Defendants.

## MEMORANDUM OPINION

Before the Court is Plaintiff Virginia Community Bank ("VCB")'s Motion for Summary Judgment (Docket No. 18), Defendants Danny Fisher, Cory Fisher, and Christy Russell's ("Defendants") Counterclaim (Docket No. 23), and VCB's Motion to Dismiss Counterclaim (Docket No. 24). Defendants appear *pro se*.

On October 16, 2009, Defendants responded to VCB's Motion for Summary Judgment. (Docket No. 22.) On October 21, 2009, VCB filed a rebuttal brief in support of the Motion for Summary Judgment. (Docket No. 26.) In their October 16, 2009 response to VCB's Motion for Summary Judgment, the Defendants raised a counterclaim. (Docket No. 23.) On October 21, 2009, VCB filed a Motion to Dismiss the Counterclaim. (Docket No. 24.)

On November 20, 2009, the Court heard oral argument as to VCB's Motion for Summary Judgment and Motion to Dismiss.[1] The matters are ripe for disposition. Jurisdiction is proper pursuant to 28 U.S.C. § 636(c).

---

[1] Although Defendants' Petition in Nature of a Motion for Evidentiary Hearing (Docket No. 32) was pending at the time of the November 20, 2009 oral argument, the Court did not hear argument on this motion.

## I. Factual and Procedural Background

### A. 2007 Note

On June 5, 2009, VCB filed a Complaint in this Court seeking a declaratory judgment as to the rights of the parties under the federal Truth-in-Lending Act ("TILA").[2] (Compl. 4.) (Docket No. 1.) VCB alleges that on July 2, 2007, Danny Fisher, doing business as Fisher Building Company, signed a promissory note in the "amount of $279,200.00 (the '2007 Note'), the proceeds of which were to be used for construction of a new home to sell located at 9910 Skyline Court, Spotsylvania County, Virginia [the 'Skyline Court Property']."[3] (Compl. ¶ 7.) "The 2007 Note was secured by a credit line deed of trust on the [Skyline Court] Property granted by Danny Fisher." (Compl. ¶ 7.) VCB alleges that Danny Fisher constructed a home on the Skyline Court Property "using the proceeds from the 2007 Note, but was unable to sell the property prior to the maturity of the 2007 Note on or about July 1, 2008." (Compl. ¶ 9.)

### B. 2008 Note

Danny Fisher entered an agreement with his son, Cory Fisher, by which Cory took a one-half interest in the Skyline Court Property, and Defendants sought to pay the balance of the 2007 Note by obtaining a new loan from VCB. (Compl. ¶ 10.) The Skyline Court Property became

---

[2] 15 U.S.C. § 1601 *et seq.*

[3] While the 2007 Note itself indicates that it was to be used "for construction of a new home" and VCB alleges that it understood the Skyline Court Property to be for sale because Danny Fisher signed the 2007 loan "D.B.A. Fisher Building Company" (2007 Note), at oral argument, Danny Fisher informed the Court that the Skyline Court residence was never for sale, and that he had always intended it to be Cory Fisher's principal residence. (*See also* Pl.'s Mot. for Summ. J. Ex. 2, Danny Fisher Interrogs. & Danny Fisher Resp. to Interrogs., No. 12 (denying that the Skyline Court Property was for sale).)

2

the principal residence of Cory Fisher and Christy Russell in February 2008. (Pl.'s Mot. for Summ. J. Ex. 3, Cory Fisher Requests for Admissions & Cory Fisher Resp. to Requests for Admissions ("Cory Fisher Admissions"), No. 3; Pl.'s Mot. for Summ. J. Ex. 4, Christy Russell Requests for Admissions & Christy Russell Resp. to Requests for Admissions ("Russell Admissions"), No. 5.)[4] The 2007 Note matured on July 1, 2008. (Pl.'s Br. in Supp. of Mot. for Summ. J. Ex. 1-A, 2007 Promissory Note.) (Docket No. 19.) Cory and Danny Fisher delivered to VCB a new promissory note (the "2008 Note"), "secured by a deed of trust executed by Cory Fisher, Danny Fisher and Russell granting VCB a purchase money security interest in the [Skyline Court] Property." (Compl. ¶ 11.) This July 31, 2008 Note had an original principal amount of $306,333.00. (Pl.'s Br. in Supp. of Mot. for Summ. J. Ex. 1-B, 2008 Promissory Note ("2008 Note").)

On May 7, 2009, VCB demanded payment in full because Cory and Danny Fisher had defaulted in their payment obligations under the 2008 Note. (Compl. ¶ 12.) On May 18, 2009, the Defendants sent VCB a document entitled Notice to Cancel, which purports to rescind the 2008 Note under TILA. (Compl. ¶¶ 13-14.)

C. **Argument in the Case at Bar**

VCB argues that, "As to Cory Fisher, the 2008 Note is a purchase money transaction secured by residential real estate not subject to the TILA." (Compl. ¶ 15.) As to Russell, VCB argues that "she is not a maker or guarantor of the 2008 Note and had no ownership interest in

---

[4] VCB's Exhibits 3 and 4 each consist of two separate documents: (1) VCB's requests for admissions; and, (2) Defendants' responses to requests for admissions. (*See* Cory Fisher Admissions; Russell Admissions.) Only the document containing VCB's requests for admissions is paginated. For convenience, the Court cites the numbers of the requests and the corresponding responses.

the Property at the time of granting a security interest in the Property." (Compl. ¶ 16.)[5] Finally, as to Danny Fisher, VCB alleges that he is not a consumer within the meaning of TILA, and that he has never used the property as his personal residence, so TILA does not govern the 2008 Note. (Compl. ¶¶ 16, 17, 19.)[6]

On July 2, 2009, the Defendants answered, asserting that VCB lacks standing to bring this suit and that no evidence exists to support VCB's claims. (Answer 1-2.)[7] With their answer, the Defendants moved the Court to order VCB to submit a sworn affidavit proving its claims and to dismiss the Complaint. (Answer 2.) The Court denied the motion. (Docket No. 10.)

### D. Motion for Summary Judgment and Responsive Allegations

On October 1, 2009, VCB filed a Motion for Summary Judgment. (Docket No. 18.) VCB seeks an order granting summary judgment against Defendants and declaring the parties' rights pursuant to TILA.

On October 16, 2009, the Defendants responded. (Defs. Objection to Pl.'s Mot. for Summ. J. for Good Cause and Countercl. ("Defs.' Objection.") (Docket No. 22.) Defendants' response also asserted a counterclaim against VCB. (Docket No. 23.)[8]

---

[5] VCB's Complaint contains two paragraphs numbered "16." Here, the Court cites the first paragraph numbered 16.

[6] Here, the Court cites the second paragraph numbered 16. No paragraph 18 exists.

[7] Defendants' Answer consists of unnumbered paragraphs and pages, so the Court designates the pages one through two and cites them accordingly.

[8] Defendants' response to the motion for summary judgment is entitled "Objection to Plaintiff's Motion for Summary Judgment for Good Cause and Counterclaim." (*See* Docket Nos. 22-23.) This single document not only responds to VCB's motion, but also raises a counterclaim. The Clerk has docketed the response as Docket No. 22, and the counterclaim as Docket No. 23. Defendants' brief as to both summary judgment and the counterclaim begins on page 5. (*See* Docket Nos. 22-23.)

Defendants assert that TILA permits a party to rescind a loan up to three years after all material disclosures have been given. (Defs.' Objection 2.) Defendants allege that VCB failed to respond "to numerous requests for Full Disclosure and Verification of the alleged 2008 loan." (Defs.' Objection 1.)

Throughout their pleadings, Defendants also allege that "there may not have been a true qualified **'meeting of the minds,'** that there may be fraud or misrepresentation on the contract and/or the contract itself may be an unconscionable contract." (Defs/Pls. Breif [sic] in Supp. of Objection to Mot. for Summ. J. for Good Cause & Countercl. ("Defs.' Br. in Resp.") Ex. A, Re: Conditional Acceptance for Value for Proof of Claim upon <u>Virginia Community Bank</u> Contract, for Determination of 'Meeting of the Minds,' 'Fraud on the Contract,' and or an 'Unconscionable Contract' and/or Agreement for Commercial Discharge, Mortgage Loan # 67001357, Dated July 31, 2008 ("Conditional Acceptance for Proofs of Claim").) Defendants appear to base their theories of fraud and a failure to reach a meeting of the minds on the theory that no loan was made because VCB "did not risk any of its funds in [sic] alleged loan/contract/account." (Defs.' Br. in Resp. 8.)

Defendants' argument derives from an affidavit captioned for another case and proffered by Walker F. Todd.[9] (*See* Defs.' Br. in Resp. Ex. A Todd Aff. ("Todd Aff.").) In this affidavit, Todd purports to submit expert testimony as to the validity of a bank note based on his twenty

---

[9] The Todd Affidavit comes to this Court unsigned. (*See* Todd Aff.) It bears a caption of *Bank One, N.A. v. Dave et al.*, No. 03-047448-CZ (Mich. Cir. Ct.) (*see* Todd Aff.), but the Court can find no date of decision in this case. The Todd Affidavit manifests itself throughout internet web sites offering advice about problematic or unpaid loans. *See, e.g.*, Restore Liberty.us, http://www.restoreliberty.us/ (search "law information - commercial," then follow "Affidavit of Walker Todd on Federal Reserve"); Get Mortgage-Free! at freemyloan.com, http://www.freemyloan.com/affidavit.html.

years' experience as an attorney and legal officer for the Federal Reserve Banks in New York and Cleveland. (Todd Aff. ¶ 2.) In what appears to be a suggestion that credit extended by a bank is not legal tender (Todd Aff. ¶¶ 4-8), Todd concludes that "money of exchange," or real money, is not required to repay a bank note. (Todd Aff. ¶ 4.) Todd asserts that when banks extend their "own *credit* (money of account), but the Defendants were required to repay in *money* (money of exchange, and *lawful money* at that)," there exists an "**inequality of obligations**." (Todd Aff. ¶ 9.) Based on this affidavit, Defendants appear to claim that VCB never lent Defendants any money.

Defendants further allege that a new contract was created by virtue of VCB's lack of response when, prior to the initiation of this lawsuit, Defendants sent VCB various documents seeking admissions that VCB did not lend Defendants anything. (Defs.' Br. in Resp. at 5-11 & Ex. A (incorporating Conditional Acceptance for Proofs of Claim; Letter from Cory Fisher and Danny Fisher to Michael McAllister, President and CEO of VCB, May 11, 2009; Notice of Fault in Dishonor and Opportunity to Cure; Affiant's Private International Remedy Demand).)

On October 21, 2009, VCB replied in support of its Motion for Summary Judgment. (Docket No. 26.) VCB states that "Defendants assert various legal theories in addition to the TILA that are not supported by facts that would allow for rescission of the 2008 Loan." (Pl.'s Rebuttal Br. in Supp. of Mot. for Summ. J. 1.)

### E. **Defendants' Counterclaim**

With the Defendants' October 16, 2009 response to VCB's Motion for Summary Judgment, the Defendants raised a counterclaim. (Docket No. 23.) Defendants' Counterclaim asserts myriad allegations: (1) that VCB has violated various laws, including Article 2 of the

Uniform Commercial Code, the Fair Debt Collections Practice Act, the Real Estate Settlement Practices Act, the Administrative Procedures Act, and the Freedom of Information Act; (2) that VCB has violated Federal Rules of Civil Procedure 34 and 37; (3) that VCB has violated the doctrine of unclean hands; and, (4) that VCB has committed fraud. (Defs.' Objection 2.) Defendants further allege that they "rescinded alleged 2008 loan due to the entire purported loan/mortgage process and Deed of Trust was obtained by wrongful acts of Fraud, Fraudulent Inducement, Concealment, no Meeting of the Minds, Undue Enrichment, Unconscionable Contract, Fraudulent Misrepresentations, Unlawful Acts of Conversion and Continuous Torts." (Defs.' Br. in Supp. of Resp. 4.) As with the arguments responsive to VCB's Motion for Summary Judgment, the arguments in support of the counterclaim appear to rely heavily on the Todd Affidavit.

On October 21, 2009, VCB moved to dismiss the counterclaim. (Docket No. 24.)

For the reasons that follow, the Court will GRANT VCB's Motion for Summary Judgment. (Docket No. 18.) The Court will GRANT VCB's Motion to Dismiss Counterclaim. (Docket No. 24.) The Court will DISMISS WITH PREJUDICE Defendants' Counterclaim. (Docket No. 23.)

## II. Summary Judgment Standard of Review

Summary judgment under Rule 56 is appropriate only when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, determines that there exists no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986), *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Once a party has properly filed evidence supporting the motion for

summary judgment, the nonmoving party may not rest upon mere allegations in the pleadings, but must instead set forth specific facts illustrating genuine issues for trial. *Celotex*, 477 U.S. at 322-24. These facts must be presented in the form of exhibits and sworn affidavits. Fed. R. Civ. P. 56(c).

A court views the evidence and reasonable inferences drawn therefrom in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. Whether an inference is reasonable must be considered in conjunction with competing inferences to the contrary. *Sylvia Dev. Corp. v. Calvert County*, 48 F.3d 810, 818 (4th Cir. 1995). Nonetheless, the nonmoving "party is entitled to have 'the credibility of his evidence as forecast assumed.'" *Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir. 1990) (en banc) (*quoting Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)). Ultimately, the court must adhere to the affirmative obligation to bar factually unsupportable claims from proceeding to trial. *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (*citing Celotex*, 477 U.S. at 323-24).

### III. Summary Judgment Analysis

For the reasons that follow, the Court will GRANT VCB's Motion for Summary Judgment. (Docket No. 18.)

#### A. Statutory Requirements of TILA

Congress enacted TILA to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). For that reason, Congress limited TILA to "consumer" transactions. "Consumer" transactions constitute those transactions in

which "the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h). Section 1603 of TILA specifically excludes from the operation of the statute "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations." 15 U.S.C. § 1603(1); 12 C.F.R. § 226.3(a); *see also Dunn v. Meridian Mortgage*, No. 3:09cv00018, 2009 WL 1165396, at *2-3 (W.D. Va. May 1, 2009) (finding that where "there is no genuine factual dispute that Meridian's loan to Dunn was for business and commercial purposes," the loan fell outside the operation of TILA).

TILA affords consumers a right to rescind certain consumer credit transactions "in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). However, "a debtor's right to rescind arises only when the loan transaction is secured by the debtor's 'principal dwelling.'" *Antanuos v. First Nat'l Bank of Ariz.*, 508 F. Supp. 2d 466, 470-71 (E.D. Va. 2007) (finding TILA inapplicable where plaintiffs admitted through deposition testimony that the property used to secure the loan had never been their principal dwelling, but rather served as a commercial rental property).

If applicable, TILA further extends the right to rescind to consumers "who have an ownership interest in the property that is the subject of the transaction and for whom the property is their principal dwelling. In other words, an individual not party to the credit agreement may still rescind the transaction if it puts her home at risk of loss." *Kuechler v. Peoples Bank*, 602 F. Supp. 2d 625, 630 (D. Md. 2009). Eligible consumers may exercise the right to rescind "until

9

midnight of the third business day following the consummation of the transaction or the delivery of the information and rescission forms . . . together with a statement containing the material disclosures required under this subchapter." 15 U.S.C. § 1635(a). However, a consumer may exercise his or her right to rescind up to 3 years after the transaction occurs if the lender has failed to provide the consumer with all material disclosures[10] and notice of the right to rescind. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23.

Congress declined to extend the right to rescind to residential mortgage transactions. 15 U.S.C. § 1635(e)(1) (excluding from the right to rescind residential mortgage transactions); 12 C.F.R. § 226.23(a)(1), (f). A "residential mortgage transaction" is "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(w). This exclusion for residential mortgage transactions comports with congressional intent "to protect consumers against surprise and oppression stemming from mortgages unwittingly executed on homes to pay for often questionable 'home improvements'" rather than to extend the right of rescission "to a loan whose predominant purpose is to enable the borrower to acquire or erect, on her property, a new residential structure." *Heuer v. Forest Hill State Bank*,

---

[10] TILA defines "material disclosures" as:

the disclosure . . . of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and the disclosures required by section 1639(a) of this title.

15 U.S.C. § 1602(u).

10

728 F. Supp. 1199, 1200-01 (D. Md. 1989); *see also Scott v. Wells Fargo Home Mortgage Inc.*, 326 F. Supp. 2d 709, 715 (E.D. Va. 2003) (finding that the mortgages at issue constituted residential mortgage transactions because the mortgage transactions occurred to finance the acquisition of the dwelling).

B. **TILA Does Not Apply to Defendants' Transactions**

Viewing the evidence in the light most favorable to Defendants, the Court concludes that TILA does not apply to the contested transactions.

1. **Danny Fisher**

Danny Fisher cannot rescind the 2008 Note because he did not secure the 2008 Note with his principal dwelling. *See Antanuos*, 508 F. Supp. 2d at 470 ("[A] debtor's right to rescind arises only when the loan transaction is secured by the debtor's 'principal dwelling.'"). On July 31, 2008, Danny Fisher and Cory Fisher executed the 2008 Note, which secured the loan from VCB with a deed of trust to the Skyline Court Property. (2008 Note.) Danny Fisher admits that he did not reside at the Property on July 31, 2008. (Pl.'s Mot. for Summ. J. Ex. 2, Danny Fisher Requests for Admissions & Danny Fisher Resp. to Requests for Admissions ("Danny Fisher Admissions"), Nos. 1-2.)[11] Instead, Danny Fisher admits that on July 31, 2008, the date he executed the 2008 Note, he resided at 11300 Fisher Creek Drive, Fredericksburg, Virginia, 22407. (Danny Fisher Admissions Nos. 1-2.) "'A consumer can only have one principal dwelling at a time.'" *Scott*, 326 F. Supp. 2d at 715 (*quoting Scott v. Long Island Savings Bank*,

---

[11] As with VCB's Exhibits 3 and 4, *see supra* note 2, VCB's Exhibit 2 consists of two separate documents: (1) VCB's requests for admissions to Danny Fisher; and, (2) Danny Fisher's responses to requests for admissions. (*See* Danny Fisher Admissions.) Only the document containing VCB's requests for admissions is paginated. For convenience, the Court cites the numbers of the requests and the corresponding responses.

*FSB*, 937 F.2d 738, 741 (2nd Cir. 1991)). Therefore, on July 31, 2008, the Skyline Court Property was not Danny Fisher's principal dwelling. Thus, Danny Fisher did not secure the 2008 Note with his principal dwelling, and therefore, Danny Fisher has no right to rescind the 2008 Note.[12]

### 2. Cory Fisher

Cory Fisher cannot rescind the 2008 Note because the 2008 Note resulted in a residential mortgage transaction. Danny Fisher and Cory Fisher secured the 2008 Note with a deed of trust to the Skyline Court Property. (Pl.'s Br. in Supp. of Mot. for Summ. J. Ex. 1, Hopkins Decl. ("Hopkins Decl."), ¶10; 2008 Note ¶ 11.) The deed of trust granted VCB a security interest in the Skyline Court Property. (Hopkins Decl. ¶ 10; Pl.'s Br. in Supp. of Mot. for Summ. J. Ex. 1-E, Deed of Trust.) Cory Fisher admitted that since July 31, 2008, he has used the Property as his principal residence. (Cory Fisher Admissions No. 4.) Therefore, VCB had a security interest in Cory Fisher's principal dwelling. Moreover, Defendants have provided no evidence to refute that the 2008 Note "was used to purchase the [Skyline Court] Property as a primary residence

---

[12] VCB urges the Court to find that Danny Fisher cannot rescind the 2008 Note both because it was not secured by his principal dwelling and because he obtained the loan for commercial purposes. (Pl.'s Br. in Supp. of Mot. for Summ. J. 7; Pl.'s Rebuttal Br. in Supp. of Mot. for Summ. J. 4.) (Docket Nos. 19, 25.) However, the parties dispute the purpose of the 2008 Note. While the 2007 Note itself indicates it was to be used "for construction of a new home" and VCB alleges that it understood the Skyline Court Property to be for sale because Danny Fisher signed the 2007 loan "D.B.A. Fisher Building Company" (2007 Note), at oral argument, Danny Fisher informed the Court that the Skyline Court residence was never for sale, and that he had always intended it to be Cory Fisher's principal residence. (*See also* Pl.'s Mot. for Summ. J. Ex. 2, Danny Fisher Interrogs. & Danny Fisher Resp. to Interrogs., No. 12 (denying that the Skyline Court Property was for sale).)

Despite this dispute, the Court may still enter summary judgment. Because the Court determines that Danny Fisher did not secure the loan with his principal dwelling, whether Danny Fisher also obtained the loan primarily for commercial purposes is immaterial. A disputed issue of immaterial fact does not preclude summary judgment.

12

and to payoff the 2007 Loan." (Hopkins Decl. ¶ 7.) Therefore, because the 2008 Note resulted in a deed of trust granting VCB an interest in Cory Fisher's principal dwelling and the proceeds of the 2008 Note were used to pay off the 2007 Note, which financed construction of the home (Pl.'s Br. in Supp. of Mot. for Summ. J. Ex. 1-A, 2007 Promissory Note), the 2008 Note constituted a residential mortgage transaction exempt from TILA's right to rescind.

### 3.   **Christy Russell**

Christy Russell cannot rescind the 2008 Note because the 2008 Note resulted in a residential mortgage transaction. Russell was not a borrower under the 2008 Note. (*See* 2008 Note (exhibiting only the signatures of Danny Fisher and Cory Fisher).) However, Russell joined Danny Fisher and Cory Fisher in securing the 2008 Note with a deed of trust to the Skyline Court Property. (Hopkins Decl. ¶10; 2008 Note ¶ 11.) Russell admitted that since July 31, 2008, the Skyline Court Property has served as her principal dwelling. (Russell Admissions No. 6.)[13] Because the parties used the Skyline Court Property to secure the 2008 Note and it served as Russell's principal dwelling, Russell falls within the class of persons who may assert the right of rescission because the credit agreement puts her home at risk of loss. *See Kuechler*, 602 F. Supp. 2d at 630. Nevertheless, the deed of trust granted VCB a security interest in the Skyline Court Property (Hopkins Decl. ¶ 10; Pl.'s Br. in Supp. of Mot. for Summ. J. Ex. 1-E, Deed of Trust), and the 2008 Note "was used to purchase the Property as a primary residence and to payoff the

---

[13]   As with Exhibits 2 and 3, VCB's Exhibit 4 consists of two separate documents: (1) VCB's requests for admissions to Christy Russell; and, (2) Christy Russell's responses to requests for admissions. (*See, e.g.*, Danny Fisher Admissions; Cory Fisher Admissions; Russell Admissions.) The Court cites the numbers of the requests and the corresponding responses.

2007 Loan." (Hopkins Decl. ¶ 7.) Therefore, the 2008 Note resulted in a residential mortgage transaction exempt from TILA's right to rescind. Thus, Russell cannot rescind the 2008 Note.

C. **Conclusion**

Because the Skyline Court Property did not constitute Danny Fisher's principal dwelling, and because Cory Fisher and Christy Russell used the Skyline Court Property to secure a residential mortgage transaction, the 2008 Note falls outside the operation of TILA. Thus, the 2008 Note is not rescindable. Defendants' Notice of Right to Cancel has no effect on Defendants' obligations under the 2008 Note. (*See* Defs.' Br. in Supp. of Resp. Ex. A, Notice of Right to Cancel (purporting to rescind the 2008 Note).)

To the extent Defendants assert various other legal theories to avoid summary judgment, these claims must fail. (*See* Defs.' Br. in Supp. of Resp. 14 ("ROR [right to rescind] was not based on TILA (Truth in Lending Act) alone. ROR was based on Lack of Assurance of Performance by VCB and due to Fraud, Fraudulent Inducement, and Concealment, no Meeting of the Minds, Undue Enrichment, Unconscionable Contract, Fraudulent Misrepresentations, Unlawful Acts of Conversion and Continuous Torts.").) First, VCB's Motion for Summary Judgment relates to the rights of the parties under TILA. The Court has considered the evidence offered and determined that the 2008 Note cannot be rescinded under TILA.

Second, although Defendants' pleadings are replete with allegations of fraud and unclean hands, Defendants fail to allege specific facts that would create a genuine issue of material fact to survive summary judgment.[14]  Rule 9(b) of the Federal Rules of Civil Procedure requires claims

---

[14] Defendants also pepper their filings by alleging violations of other statutes. For example, at oral argument, Defendant Russell erroneously argued that all mortgages are mortgage-backed securities, suggesting that VCB's failure to report owning any securities to the

of fraud to be pled with particularity. Fed. R. Civ. P. 9(b). That is, "the 'circumstances' required to be pled with particularity under Rule 9(b) are 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) *(quoting* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1297, at 590 (2nd ed. 1990)). Defendants have failed to allege any such facts with particularity. At best, Defendants have made a less-than-convincing argument that the loan extended by VCB to Defendants was only a bookkeeping transaction, and thus no real money was exchanged. Thus, Defendants present no facts sufficient to create a genuine issue of material fact, and the Court will therefore GRANT VCB's Motion for Summary Judgment. (Docket No. 18.)

### IV. VCB's Motion to Dismiss Defendants' Counterclaim

As discussed above, Defendants' Counterclaim asserts myriad allegations: (1) that VCB has violated various laws, including Article 2 of the Uniform Commercial Code, the Fair Debt Collections Practice Act, the Real Estate Settlement Practices Act, the Administrative Procedures Act, and the Freedom of Information Act; (2) that VCB has violated Federal Rules of Civil Procedure 34 and 37; (3) that VCB has violated the doctrine of unclean hands; and, (4) that VCB has committed fraud. (Defs.' Objection 2.) Specifically, the Defendants allege that Defendants "rescinded alleged 2008 loan due to the entire purported loan/mortgage process and Deed of Trust was obtained by wrongful acts of Fraud, Fraudulent Inducement, Concealment, no Meeting

---

State Corporation Commission constituted untoward conduct. Defendants also asserted that VCB's production of a color copy of the 2008 Note proves that VCB sold the note and is no longer the holder in due course. These arguments appear to form the basis of Defendants' claim under Article 2 of the U.C.C., but in any event, they are unavailing.

of the Minds, Undue Enrichment, Unconscionable Contract, Fraudulent Misrepresentations, Unlawful Acts of Conversion and Continuous Torts." (Defs.' Br. in Supp. of Resp. 4.) The crux of this argument appears to be the distinction made in the Todd Affidavit between money of account and money of exchange (*see* Todd Affidavit), which Defendants claim proves that no loan transaction occurred.

VCB moved to dismiss the counterclaim, arguing: (1) that Defendants have failed to state a claim upon which relief can be granted; and, (2) that Defendants' claim was not timely raised, and therefore Defendants have waived any counterclaim. (Pl.'s Br. in Supp. of Mot. to Dismiss Countercl. 3-5.) (Docket No. 25.)

### A. Defendants' Counterclaim Is Untimely

Defendants have asserted a compulsory counterclaim that "arises out of the transaction or occurrence that is the subject matter of [VCB's] claim" because it asserts allegations related to the 2008 Note. Fed. R. Civ. P. 13(a)(1); *see Painter v. Harvey*, 863 F.2d 329, 331-32 (4th Cir. 1988) (enunciating four factors for consideration in order to determine whether a counterclaim is compulsory). Therefore, Defendants were required to state their counterclaim at the time they answered VCB's Complaint. Because Defendants failed to file their counterclaim with their Answer, Defendants waived their right to file a compulsory counterclaim. Thus, Defendants' Counterclaim is untimely.

### B. Defendants Failed to Seek Leave Prior to Filing this Counterclaim

Not only is Defendants' Counterclaim untimely, but also, "a party is generally not permitted to raise a new claim in response to a motion for summary judgment." *White v. Roche Biomedical Labs., Inc.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992); *see Bridgeport Music, Inc. v.*

*WM Music Corp.*, 508 F.3d 394, 400 (6th Cir. 2007) ("To the extent Bridgeport seeks to expand its claims to assert new theories, it may not do so in response to summary judgment or on appeal."). Because Defendants had previously filed a responsive pleading without raising the instant counterclaim, Defendants were required to seek either "the opposing party's written consent or the court's leave" to amend their pleadings to include the instant counterclaim. Fed. R. Civ. P. 15(a)(2). Defendants obtained neither VCB's permission nor this Court's permission prior to filing. Therefore, for the foregoing reasons, the Court will GRANT VCB's Motion to Dismiss Counterclaim (Docket No. 24), and DISMISS WITH PREJUDICE Defendants' Counterclaim (Docket No. 23).

## V. Conclusion

For the foregoing reasons, the Court shall GRANT Plaintiff VCB's Motion for Summary Judgment. (Docket No. 18.) The Court shall GRANT VCB's Motion to Dismiss Counterclaim. (Docket No. 24.) The Court shall DISMISS WITH PREJUDICE Defendants' Counterclaim. (Docket No. 23.)

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 12/1/09